24-2059 United States v. Norton. Mr. Braun? Good morning, Your Honors, Counsel. May it please the Court, I'm James Braun on behalf of the United States. Over the years, the Supreme Court and this Court have consistently said that the exclusionary rule exists to deter official misconduct. And the rule of Franks v. Delaware furthers that purpose by allowing a defendant to challenge an affidavit's deliberate misstatement or omission in an affidavit if it's material to probable cause. And this Court has also noted that the police may not insulate one officer's deliberate or reckless misstatement or omission simply by relaying it through an officer affiant who is ignorant of its falsity or existence. But by its own terms, the Franks rule has a limited scope as to when exclusion of evidence is mandated. And here, the District Court erred by extending Franks to apply to an off-duty officer from another jurisdiction with no official role in the investigation who just happened to witness a crime. Can I interrupt you there? You say no official role in the investigation. The District Court made a specific finding that if it was required that there be participation in an investigation, that that was true here. And you're not challenging that finding as clear and convincing, are you? We are challenging that as a legal conclusion. We don't challenge the seven facts on which the Court relied to reach that conclusion. But similar to District Court's legal conclusion that certain facts mean an officer complied with the knock-and-announce rule, or certain facts as a matter of law equal probable cause, here, the District Court's conclusion that those facts mean Chief Romero played a sufficient role in this investigation, we're arguing as a matter of law that's an incorrect conclusion. It's also not a conclusion that he played an official role in the investigation. It's just that the Court believed he played a sufficient role in the investigation. And if I could briefly summarize the facts. In October of 2021, University Police Chief Clarence Romero and his wife were having drinks at a bar in Las Vegas, New Mexico when local law enforcement arrived to execute arrest warrants for several members of the Mongols Motorcycle Club. Chief Romero was off-duty. He and his wife observed an interaction between the defendant and his girlfriend that led Chief Romero to believe the girlfriend had taken an object from the defendant's waistband, and he believed it was a gun. At the time, though, at the scene, Chief Romero and his wife said that they saw the defendant's vest go up, but they didn't see if the girlfriend took anything or put anything into the waistband. But officers found a gun in the girlfriend's purse. The defendant was determined to be a felon, and the FBI adopted the case against the defendant. When Special Agent Acey, who was assigned to the case, decided to prepare an affidavit for a DNA search warrant, he reached out to Chief Romero, and Chief Romero told him that he had observed the defendant or the defendant's girlfriend take an object from the defendant's waistband and put it into her purse. Did he reach out to any other witnesses in the bar in doing his search warrant investigation or preparation? No, he did not. Why did he reach out to Chief Romero? Because Chief Romero's information was the most relevant. He's the one who had actually observed something, and there was a discrepancy between what was in the deputy's probable cause statement and what was in a report as to the exact details of that, and Agent Acey wanted to clarify that. Well, what bothered the district court, and I guess bothers me, is that the government elevated the chief's status as a law enforcement officer, albeit off-duty, to effectively bolster the credibility of its submission to the district court. Why was it relevant to describe Romero's status in the search warrant affidavit if he'd been a post office worker or from the social security office? Would that have been information that the government would have included in the search warrant? And really, to come to my question, if the affidavit omitted his status as a law enforcement official, do you think the district court would have found probable cause based on this application? I do, based on the application that a witness observed the defendant's girlfriend take an object from the defendant's waistband and put it in her purse, and then a gun was found in the purse. I believe that a judge would have found probable cause based on that, regardless of Chief Romero's  background. And I think Chief Romero's background would have been relevant even if he was retired and not an active law enforcement officer. And so the fact that he is a law enforcement officer, certainly that could add some background, some credibility to his statement, but it doesn't answer the question of whether he is an officer for purposes of attribution under Franks. When did the discrepancy in statements become apparent? I think it became apparent to Agent Acey right away. When he was asked to adopt the case, he received reports. He saw the probable cause statement. He saw that... So when he prepared the affidavit, he knew there was a conflict? Right. And that's why he decided to go straight to the source, thinking that was the best thing to do to see what the actual facts were. Wasn't his testimony that because he was a law enforcement officer, I thought it would be best to go right to the source? It was. Yes. But again, I think that would have been true even if Agent Acey was a retired law enforcement officer. The idea that this is somebody who I can just talk to directly to see what did he see? Did he see something? Did he not see something? But again, for Franks' purposes, where the goal is to... First of all, Franks being a limited rule to the affiant or a fellow officer who is providing information to the affiant, Chief Romero did not play that role here. And to start in the district court's analysis when it attributed Chief Romero's... Are you asking for a bright line rule here that an off-duty officer who's not part of the investigation can never be a government employee for Franks' purposes? No, we're not asking for a bright line rule. What's your line? The line would be that if the officer is engaged in his official duties, and an off-duty officer can morph into an officer engaged in his official duties at some point in their involvement. And we kind of see... Is it a fact question then? Well, you have to find facts to determine as a matter of law, does that equal an officer for Franks' purposes? So there is a scenario where Romero in this case could have become part of the team and be a government employee for Franks' purposes? I imagine there could be. Now, the fact that he's from a different jurisdiction and he was outside of his jurisdiction, that may change things. But in Garcia Zambrano, the officer there who was off-duty working at an apartment complex, he arguably did morph into someone engaged in his official duties because he solicited the help of his own department, he interviewed witnesses, and he wrote a report. He wrote what seems to be from the opinion, and it wasn't fleshed out because it wasn't an issue in that appeal, but he wrote a report, and that is an official act. And so there, he did seem to transform from an off-duty officer to someone engaged in his official duties. But again, the court, even in Garcia Zambrano, didn't have to decide that issue because it wasn't raised. And I think it makes sense that it wasn't raised in that case because there would have been a much better argument that the officer was engaged in his official duties because of his extensive involvement in that investigation. Well, here the off-duty police officer sort of inserted himself into the investigation and that help was accepted. They involved him, didn't they? Well, they didn't necessarily involve him in the investigation. He offered certain tips on, you know, there may be- Well, they didn't say step back, go away, this is none of your business. No, but he also wasn't inserting himself into the melee, and that would be different. If he said, I'm a law enforcement officer, I'm going to confront the girlfriend and ask if there's anything in her purse, or I'm going to confront the defendant, he waited. He actually acted more like a civilian witness in that context, understanding that he was outside of his jurisdiction. He waited for everything to die down, then he asked to speak to the deputy, and he reported facts the same way we would expect many citizen witnesses to do. He happened to observe things based on his law enforcement background, but again, that would be true even if he was a retired law enforcement officer. And there is no indication that the other officers accepted his involvement and interviewed witnesses he suggested or looked at video he suggested. Really, the reason that the FBI agent made him involved in the investigation is because he was a witness. He had witnessed facts that were relevant to the case, and so he talked to him the way an agent might talk to any witness. Do you think that because they knew he was involved in- a trained law enforcement officer, that they gave greater credence to what he was saying and his powers of observation? And his instincts? I think in the second affidavit, because we have two affidavits here, second affidavit that's not an issue on this appeal, Agent Acey went into more detail about Chief Romero's background and the fact that he had experience with motorcycle clubs. I don't think he did that in the first affidavit. It was more, this is what somebody observed, and those observations from a named witness, it's not like it was an unnamed informant, that made it credible enough for a search warrant affidavit purpose. But that that witness had observed the girlfriend take an object from his waistband and put it in her purse and a gun was found in the purse. That was enough to establish probable cause. And that didn't necessarily rely on Chief Romero's background and experience. But again, even if it did, Chief Romero could have had the same background and experience as a retired law enforcement officer. That wouldn't make him an officer, for Frank's purposes, whose misstatement can be attributed to the government. Well, are you saying a retired officer statement could never be attributed, a false statement could never be attributed to the officer who signs the affidavit? I'm not saying never, but in a context similar to this, where say a retired officer is at a bar, observes a crime, and relates facts about that to the investigating officers, there would be no basis for attributing any misstatement by that retired officer to the government for Frank's purposes. Because again, Frank's is a limited rule. And the district court held as an initial matter that Chief Romero's statement was attributable to the government for the simple fact that he was a government employee and there was no Supreme Court or Tenth Circuit case that limited Frank's to just government employees who play an official role in the investigation. But all of the cases, with one exception, that talk about this, involve exactly that. Whether it's Kennedy, where the non-affiant officer was a local officer, dog handler, who was assisting in his official role with DEA. Whether it's the Kennedy case, or the, sorry, the de Leon case out of the Ninth Circuit, where it's two investigators in their official duties investigating a case, one's the affiant, one's not. All of those cases cited involve non-affiant officers who are acting in their official capacity. And that makes sense, because Frank's is designed to deter official misconduct, conduct, misconduct engaged in by someone while engaged in their official duties. Could A.C. have reviewed, wasn't there body cam footage that would have disclosed the interview, initial interview, am I remembering that correctly? There was, and he, Agent A.C. had not reviewed that. If he'd listened to that, it would have highlighted the discrepancy in Romero's testimony. It would have. It would have highlighted it more, but again, then he goes and talks to Chief Romero and Chief Romero says, well, this is what I saw. Now, it may be that Agent A.C. would have then asked him, well, but you said this at the beginning, why the discrepancy, and that would have been clarified. Or Agent A.C. would have laid out the discrepancy better in his affidavit. He should have laid it out in the affidavit. Right, right. But he hadn't reviewed that here. Now, going back to the cases that talk about this issue and that involve officers acting in their official capacity, the one exception is Garcia-Zambrano. And in that case, that wasn't decided, it wasn't raised. And again, there's a good argument that that officer was engaged in his official duties because he wrote a report, and he did so much in conjunction with his own department. I have 24 seconds left, if I could reserve that for rebuttal. I'll give you some rebuttal. Thank you. Good morning. Violet Edelman for Sean Norton. As the government has acknowledged, the purpose of the exclusionary rule is to prevent law enforcement officers from engaging in official misconduct to violate a person's constitutional rights. Consistent with this purpose, Franks makes clear that the government must be accountable for statements in an affidavit for a search warrant made not only by the affiant, but also statements made by other government employees, regardless of their role in the investigation. And this rule is straightforward. It's been applied uniformly by the circuits, including this one. What's the misconduct that we're focused on here? It was the reckless disregard for the truth in the reporting by AC, by Romero? No, by Chief Romero. And so the government's effort to narrow the rule in terms of its application to Chief Romero. How does exclusion of the evidence deter, have any deterrent effect here on the law enforcement agency in charge? Well, I'm not sure the question is about whether it's the law enforcement agency in charge, since we know it applies to officers who aren't part of the same agency. But I guess the exclusionary rule, the exclusion of evidence here would deter people like Chief Romero from inserting themselves in random investigations? Well, I don't think it would deter him from being involved in the investigation. It would ensure that he reports what he sees accurately. He is a law enforcement officer. He spent 35 years in law enforcement and worked for the same task force that was investigating this crime. But it's kind of a one-off. I mean, he happens to be a witness during a raid. I mean, the lack of case law in this area probably suggests that this sort of behavior doesn't happen very often. What purpose would really be served by excluding this evidence when it's such an unusual fact and circumstance that seems to never come up, maybe once a decade? Well, it may present itself rarely, but the fact is that Chief Romero inserted himself into the investigation and did so as a law enforcement officer. And then the other agents in the case were relying on him because of his status as law enforcement and his experience and background and training and certainty about what he said he saw. Well, and I guess your position would be that they deferred to him and didn't do the normal checks that they would do with a non-trained witness, like looking at the other statements that contradicted the interview. Right. And that's what, as you pointed out before, Your Honor, when Agent Acey said he decided he would go straight to the source because he was law enforcement and he credited what Chief Romero was saying. So Chief Romero himself became involved because of his experience and training, but also he was treated by the rest of the agents that were involved in the case, and in fact, probably the magistrate who was issuing the warrant, and that's where it became material to a finding of probable cause. Let me ask you this. The district court indicated that Chief Romero was, in fact, involved in the investigation here, and that if that was a requirement, it was met. What's our standard review on that? Are we dealing with a finding of fact, a conclusion of law, or a mixed question of law and fact? Well, I think that the only way, given the district court's findings, that the government can ask for reversal here is if it's asking for a bright-line rule, that either a person is on the task force that's actively investigating the rule or not. That seems like a bright-line rule to me, that it doesn't square with Frank's, but anything else where we're looking into what the person actually did to determine whether they were sufficiently involved in the investigation, that becomes a fact question that has to be reviewed for clear error in terms of the district court's factual findings. And the district court made plentiful factual findings to support its conclusion that under any standard, even one like the one the government might be asking for, Chief Romero was involved in the investigation to the point where he is subject to Frank's. I would also say that the involvement in the investigation, to the extent that that would afford any deterrent effect or supports the purposes of Frank's as a deterrent, it's baked into the rule the way that it is, because once a law enforcement officer is speaking to other law enforcement officers and that statement becomes material to a finding of probable cause, that's involvement in the investigation enough. But certainly here, where you have someone with 35 years of experience who served on the very task force that was investigating the crime, who was proactively looking at the situation, and even before he saw anything, wondering whether someone might have a firearm, and then waited around and spoke to Deputy Vigil, and everything he did, he conducted himself as someone who was investigating the case. And in fact- Let me ask you. One of the things I struggle with here is if you excised just the untruthful portion, you would still have Chief Romero seeing rather unusual conduct, the girlfriend going over as soon as the other officers come in, standing in front of him, and they saw the vest lift. I mean, probable cause sometimes is furtive motions. If you excise that information, do we not have a valid warrant? Well, the district court concluded that we didn't, and that- That's an issue of law, right? It is ultimately probable cause is an issue of law, but that's not something that the government has brought before this court in this appeal. It's also still inseparable from Chief Romero's status as law enforcement. I think there was more also discrepancy than even just coming down to whether he saw an object or not, but- As a law enforcement official, do you think probable cause would be established? It's hard to know what would have happened if he hadn't been discussed as a law enforcement officer, but no, I don't. I also think that it's hard to do in this case because everything about his participation was so connected to his law enforcement background, and presumably if he was just a confidential informant, his testimony, his statements would have been credited a different way. I mean, I think we look at reliability when we're looking at probable cause, and he's inherently more reliable as a chief of police than just some unidentified witness or a witness who doesn't have any sort of connection to law enforcement. I have one- I have one question, please. What do we do with the fact that the government has not appealed this issue of probable cause from the affidavits? What do we do with that? Well, I think because that issue is not presented in this appeal, there's no reason to disturb the district court's finding, and it's not something that the parties have had the opportunity to brief or evaluate. So the only question today is whether Chief Romero is a law enforcement officer subject to Frank's, and anything else is outside the scope of this appeal. What is the rule you'd like us to adopt, the bright-line rule? Is it all government employees, you know, the post-delivery guy, the dog catcher? I mean, what's your rule? Well, there is no reason to adopt any rule different than what this court said in Kennedy, which is that the government is accountable for statements made by all government employees. I think it's possible there are cases that might present different facts where the question might be more squarely before this court, and there might be more to dispute, but here there's no question because Chief Romero is a law enforcement officer, and that, I mean, that's really the person that this rule is aimed at. There is no bright-line test. You're saying it's a case-by-case, fact-specific determination. Well, I think the bright-line test is statements by a non-fiant government employee in this circuit. I mean, sometimes other circuits have used other words like official, but there's never been any question that a law enforcement officer qualifies under that standard, so there's no need to change the prevailing test. I don't think a law enforcement officer from, you know, if somebody from the Texas Rangers happened to be in Santa Fe and saw this, I don't think that alone would confer frank status to you or government employee status. Well, I think there are cases definitely where people from other jurisdictions and other states have passed along information, and it goes through a chain of different law enforcement or government officers. But I mean, this case is a question where we have someone who is a seasoned law enforcement officer, a current law enforcement officer, and has extensive experience with the very type of investigation that was going on here. Well, there has to be some kind of materiality evaluation, doesn't there? Well, and that's true. That's baked into whether something gets suppressed under franks because it has to be material, and so that requirement is really already there in the rule. What the government is doing is trying to import some threshold requirement, and the only thing that rule does or adds to the rule as it exists is threaten to open the door to the kind of misconduct that we're trying to deter. Investigations are not static, and they're not linear, they're dynamic, and sometimes they don't have an obvious starting point, and sometimes officers who aren't assigned to the investigation will be instrumental to the way that a search warrant is obtained. So there's no way to make a narrower rule that will not actually subvert what Franks is doing, which is making sure that law enforcement is deterred, and it is careful, consistent with their training in constitutional rights, to respect those constitutional rights. Help me out a little, because I'm trying to envision what an opinion would look like that supports your position, and I guess the question presented would be, for Frank's purposes, an individual becomes a government employee when ... Can you finish that sentence for me? For Frank's purposes, an individual who is a government employee is subject to this rule. That's not going to work for me, I'll tell you right now. Just because he's a federal, state, or local government, that's too broad. You can disagree with that, but give me a narrow word. It could be quite narrow in that it applies to Chief Romero. I mean, even if there's some requirement of his involvement, being the person who instigates an investigation, and using your experience and status as law enforcement to conduct that investigation, and in your relation to other officers, and giving a statement that then becomes material to probable cause, that is enough. There's no need to go any further, or contemplate any other situation, because this one falls so squarely within the realm of Frank's and Kennedy. If there are no further questions ... Judge Muldock, do you have any follow-up questions? No, I'm through. Thank you, counsel. Thank you. And give him a minute. Thank you, Your Honor. Judge Tinkrich, to answer your question, an individual becomes a government employee when they are acting in their official capacity. And there are always exceptions to bright-line rules, but to the extent we're asking for one, that would be it. And it's entirely consistent with Frank's, the object of which is to deter official misconduct, conduct by someone acting in their official capacity. And it's also consistent with Kennedy, where it's implicit that government employee means someone acting as a government employee. You know, but it's kind of fuzzy in Zambrano. It's a little fuzzy whether that officer was in his official capacity or not. And, you know, I'm just wondering, you know, kind of a random encounter like this, and, you know, basically the officers on the scene enlist him to help out with the investigation. So he's not really officially part of the team, but he's like a consultant or, you know, I deputize you for the purposes of the next hour to help us, you know, rummage through the liquor cabinet and the trash bin looking for guns. Wouldn't that work? If they had done that, that might be different. If they had said, we want you to help, we want you to- You think that would constitute official capacity? It certainly could. And if they had said, please go handcuff a few of those people, keep order, go talk to that witness, they would be, you know, essentially deputizing him. But that's not what happened here. Is it relevant to the inquiry how the affiant used the witness's status as a law enforcement officer in obtaining the warrant, relying on their training and their perception and their instincts as a law enforcement officer with 35 years of experience in explaining why a warrant meets the probable cause standard? I don't think that would morph the witness into an official officer for these purposes, because again, Chief Romero could have been retired and the same thing would apply where- Do you have any case that says that a retired law enforcement officer who does something similar to what happened here could not fall under the Franks rule? No, but to the extent Kennedy says it applies to government employees, again, we would argue government employees acting in their official capacity, but a retired government employee we would submit does not fall into that category. And there are lots of witnesses who might have specialized knowledge that would be relevant in an affidavit. If it's a retired postal employee and this is a postal theft case and that person just happens to be a witness, you might put that into the affidavit. If the witness is a nun, you might say Sister Margaret saw this and that makes her more credible, but that doesn't turn any of them into a government agent. Judge Baldock, any questions? No. Thank you, counsel. Time's expired. You're excused and the case is submitted.